IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-01600-WYD

TONI A. LEHMAN,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

In April 2010, Plaintiff filed an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-433.  (ECF No. 11, Administrative Record (AR) 126-32.)  Plaintiff claimed that she became disabled on October 15, 2008, due to degenerative disc disease, migraines, lower back, neck, and shoulder pain, and mild depression.  (*Id.* 145.)  Born in 1965, Plaintiff was 43 years old on her alleged onset of disability date and 46 years old on the date of the ALJ's decision.  (*Id.* 23, 126).  She has a high school education, plus one year of college (*id.* 146), and worked in the past as a certified nurse assistant.  (*Id.* 147.)

After Plaintiff's application was denied initially (AR 66, 75-77), she requested a hearing before an Administrative Law Judge ["ALJ"].  (*Id.* 80-81.)  Following a hearing in July 2011, the ALJ issued a decision dated August 18, 2011, concluding that Plaintiff was not disabled within the meaning of the Social Security Act ["the Act"].  (*Id.* 10-23.)

More specifically, in the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found at step one that Plaintiff met the insured status requirements of the Act through December 31, 2013 (AR 12).  She also found that Plaintiff had not engaged in substantial gainful activity since October 15, 2008, the alleged onset date.  (*Id.* 12.)

At step two, the ALJ found that Plaintiff had the following "severe" impairments: status-post cervical fusion and depression.  (AR 13.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, app. 1.  (*Id.*)

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"].  She found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 1567(b), with the following additional limitations:  no climbing ladders, ropes, or scaffolds; occasionally climb stairs, balance, stoop, crouch, kneel, and crawl; no work requiring repetitive or prolonged flexion or extension of the neck; should avoid concentrated exposure to extreme heat and cold, environmental irritants, dangerous machinery, and unprotected heights; could follow one and two-step instructions, concentrate for up to two hours at a time, and complete predictable tasks; and should have limited contact with the general public.  (AR 15.)

-2-

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (AR 21.)  At step five, however, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including office cleaner, cafeteria attendant, and packager.  (*Id.* 22, 56.)  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act from October 15, 2008, through August 18, 2011, the date of the decision.  (*Id.* 23.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-5), making the ALJ's decision the Commissioner's final decision.  *See* 20 C.F.R. § 422.210(a).  Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ erred by failing to express the RFC finding on a function-by-function basis, and that she failed to properly assess the severity of her headache condition.  Plaintiff also argues that the physical restrictions in the RFC finding are not supported by any evidence in the record, and that the ALJ failed to properly assess her mental impairments.  Finally, Plaintiff argues that the ALJ failed to properly weigh the treating physician opinion.

II.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Thus, I will not consider post-hoc arguments of the Commissioner.

B. <u>The Merits of Plaintiff's Arguments</u>

1. <u>The Step Two Analysis</u>

Plaintiff argues that the ALJ erred at step two when she found that Plaintiff's headaches were "non-severe." (AR 13.) Turning to my analysis, the Tenth Circuit has indicated that case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676-77 (10th Cir. 2004). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132

F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id*.

In the case at hand, the ALJ considered certain medical evidence in the form of brain MRIs, a head CT, and treatment records, and determined that the record did not support Plaintiff's testimony regarding her headaches.  (AR 13.)  She found that "[t]here is no evidence within the medical record that indicates these [headache] conditions impose more than minimal restrictions on the claimant's ability to perform basic work related tasks."  (*Id*.)  This is simply incorrect, as the ALJ ignored and failed to weigh the headache questionnaire filled out by treating physician Dr. Buchanan.  *See Carpenter*, 537 F.3d at 1266 (the regulations require the ALJ to consider all the evidence in the record and must "discuss 'the significantly probative evidence he rejects[]'" (quotation omitted).

Dr. Buchanan stated in the questionnaire that Plaintiff has two to three headaches per week that last from four hours to all day, and would prevent Plaintiff from functioning on a job while they are occurring.  (*Id*. 1267.)  Her headaches caused nausea and generalized weakness, and occurred in spite of prescribed Fioricet (*Id*.)  Certainly, such headaches would impose more than minimal limitations on performance of work.  As such, the Commissioner's argument that Dr. Buchanan's headache questionnaire was not significantly probative evidence is meritless.

Moreover, the ALJ erred as she failed to weigh Dr. Buchanan's opinion as a treating physician and consider the factors set forth at 20 C.F.R. §§ 404.1527(d) and 416.927(d), as discussed in more detail in Section II.B.3, *infra*.  "It is the ALJ's duty to give consideration to all the medical opinions in the record."  *Keyes-Zachary*, 695 F.3d

at 1161; *see also Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009)

(unpublished) ("An ALJ must consider the opinion of every medical source and provide

specific, legitimate reasons for rejecting it").  The ALJ must also discuss the weight

assigned to such opinions.  *Keyes-Zachary*, 695 F.3d at 1161.  The failure to weigh

Dr. Buchanan's opinion regarding Plaintiff' headaches cannot be deemed harmless

error, and requires a remand of the case.[1]

### 2.    The RFC Assessment

Next, Plaintiff argues that the ALJ erred in connection with the RFC assessment

as she found that Plaintiff is capable of performing light work without making a function-

by-function analysis.  I agree.  An RFC "must include a narrative discussion describing

how the evidence supports each conclusion, citing *specific* medical facts. . . and

nonmedical evidence."  *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. July 28,

2003) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *7).  The ALJ also must

conduct a "function-by-function assessment based on all the relevant evidence."  *Id*.

This assessment, which encompasses seven strength demands, is generally required

before determining what exertional category of work is allowed by that RFC.  SSR 96-8,

1996 WL 374184, at *7.  That is because all of the limitations taken in combination may

result in a different outcome than treating them separately.  While this may be harmless

error in many cases, I find it is not in the case at hand.

---

[1] It appears the ALJ simply missed Dr. Buchanan's opinion that Plaintiff is not able to function while the headaches occur.  This error cannot be excused by the Commissioner's post hoc contention that the ALJ would have reached the same result had she properly considered Dr. Buchanan's opinion. Indeed, the Tenth Circuit has held that "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and its progeny.  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The ALJ's failure in this case to express the RFC finding in terms of specific functions prevents me from understanding how the ALJ treated the medical opinion evidence and Plaintiff's testimony.  Light work requires lifting up to twenty pounds, 20 C.F.R. §404.1567(b), and "most light jobs -- particularly those at the unskilled level of complexity -- require a person to be standing or walking most of the workday. . . ."  SSR 83, 1983 WL 31254, at *4 (1983).  Treating physician Dr. Buchanan limited Plaintiff's lifting to ten pounds and standing and walking to two to three hours.  (AR 1268-69). Dr. Dallenbach also limited lifting to ten pounds and indicated a need to change positions between sitting, standing and walking.  (*Id.* 1066.)  The ALJ stated that she gave "little weight" to each of the physician's opinions, but appeared to reject them entirely.  (*Id.* 20-21.)  Plaintiff testified that she can sit for twenty minutes at one take, stand for ten-to-fifteen minutes at one time, walk twenty-to-thirty minutes at one time, and lift ten pounds.  The ALJ did not address this testimony, but appeared to reject it as it was inconsistent with the RFC.  (*Id.* 48.)  However, if the ALJ did not believe Plaintiff's testimony about her limitations, "[s]he should have articulated that conclusion so that this court could review it."  *Nunn v. Apfel*, No. 97-7121, 1998 WL 321189, at *2 (10th Cir. June 8, 1998).

The ALJ's failure to  specifically determine Plaintiff's ability to sit, stand, walk, lift, etc., is particularly problematic as no acceptable or other medical source opined that Plaintiff was able to lift twenty pounds or to stand or walk most of the workday.[2]  I am

---

[2] The only evidence in the record that supported the ability to perform light work was the determination of a non-examining single decisionmaker ["SDM"], who the ALJ stated that she did not give weight to.  (AR 21.)  Indeed, such opinion is entitled to no weight as an SDM is not a medical professional. *Klobas v. Astrue*, No. 08-cv-02324-REB, 2010 WL 383141, at *5 (D. Colo. Jan. 29, 2010).

thus unable to determine how the ALJ resolved the evidence and what evidence she

relied on in making her implicit findings that Plaintiff could fulfill the sitting, standing,

walking, lifting, and other requirements of a full range of light work.[3]  This is further

exacerbated by the fact that, as discussed in the next section, the ALJ did not properly

weigh the medical opinions.  Accordingly, the ALJ's determination that Plaintiff could

perform light work, without the function-by-function assessment, is not supported by

substantial evidence and a remand is required.

3.     Plaintiff's Physical Restrictions in the RFC and the Weighing of the
       Medical Evidence Regarding Those Restrictions

Related to the above argument regarding the RFC, Plaintiff also argues that the

physical restrictions in the ALJ's RFC finding are not supported by any evidence in the

record.  As discussed in the previous section, while the ALJ stated that she gave "little

weight" to the opinions of the only physicians who addressed that  issue—Dr. Buchanan

and Dr. Dallenbach—it appears that she completely rejected their opinions.  (AR 20-21).

She also rejected Plaintiff's testimony about her limitations since the RFC did not take

these into account.  There was no other evidence in the record that addressed Plaintiff's

functional limitations, and the ALJ's finding that Plaintiff can perform light work is thus

not supported by substantial evidence.  *See Baker v. Barnhart*, 84 F. App'x 10, 14 (10th

---

[3] The Commissioner argues that while most light jobs require a person to be standing or walking most of the workday, the regulations explicitly contemplate that a light job may also involve "sitting most of the time." 20 C.F.R. § 416.967(b).  This argument, however, supports my finding that the ALJ erred by failing to conduct a function-by-function assessment.  Without such an assessment, it is impossible to determine which type of light work the ALJ found Plaintiff could do.  If she found that Plaintiff was limited to light work that involved sitting most of the time, she did not make the vocational expert aware of this.  This could have impacted the step five analysis.  Indeed, it is hard to imagine that any of the jobs the vocational expert found Plaintiff could do would involve sitting most of the time, especially not the jobs of office cleaner or cafeteria attendant.

Cir. 2003) (unpublished) (where no doctor has defined a claimant's capability for walking, standing or sitting, etc., or the level of exertion that the claimant can perform or the limitations, if any, on the claimant's movement or posture, the ALJ is "not make any RFC determination—there is no evidence to support such a finding.)  Further, the Tenth Circuit has made clear that where the ALJ fails to point to specific evidence supporting each conclusion, the RFC findings are not supported by substantial evidence and a remand is required.  *See Southard*, 72 F. App'x at 784-85; *Conkle v. Astrue*, 297 F. App'x 803, 806 (10th Cir. 2008) (unpublished).

While the ALJ points to diagnostic imaging which she states show only mild degenerative cervical changes, as well a treatment for unrelated conditions, and the fact that Plaintiff has received only conservative care since her surgery (AR 20), these do and cannot answer the question as to what functional limitations Plaintiff has as a result of her impairments which the ALJ found were severe.  For example, the mild imaging study relied on by the ALJ as conflicting evidence does not prove that Plaintiff can lift twenty pounds rather than ten.  Moreover, the fact that Plaintiff received treatment for unrelated conditions and received conservative therapy does not help determine her capacity for lifting, standing, or the other strength requirements.

The ALJ chose to speculate that such things refute the restrictions imposed by Dr. Dallenbach and treating physician Dr. Buchanan.  However, she does not have the medical expertise to decide this.  *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay*

*opinion'*") (emphasis in original) (quotation omitted).  Instead, the physicians are in the
best position to determine how such things as mild imaging results affect Plaintiff's
lifting, sitting, standing, etc. capacities.  Indeed, a treating physician's opinion is given
particular weight because of his 'unique perspective to the medical evidence that *cannot
be obtained from the objective medical findings alone* or from reports of individual
examinations. . . ."  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

  This brings me to the ALJ's rejection of the medical opinions in the case.
Treating physician Dr. Buchanan completed an RFC assessment in which he limits
Plaintiff's lifting to ten pounds, sitting to two to three hours per day, standing and
walking to two to three hours per day, rare stooping and kneeling, no squatting or
crawling, rare forward or backward flexion of the neck, and indicated that Plaintiff
needed to lie down three times per day during the workday.  (AR 1268-71.)  The ALJ
gave this opinion "little weight" because she found "it was not supported by the evidence
of record, including Dr. Buchanan's own treatment notes."  (*Id.* 20.)  She further stated
that "[r]ecent post-operative imaging shows only mild degenerative cervical changes,
and the most recent office visits with Dr. Buchanan have been unrelated to the
claimant's alleged back impairment."  (*Id.*)  The ALJ concluded that "Dr. Buchanan's
opinion is inconsistent with the remainder of the medical evidence, as well as
inconsistent with his own treatment notes."  (*Id.*)  I find several errors with this analysis.

  First, Dr. Buchanan's treatment notes state as of August 2010, well after the
2009 surgery, that Plaintiff "has had continuous, sharp low back pain, with bilateral
lower extremity pain radiation at times" with "numbness, paresthesiae, and weakness at
times" in the legs and "neck pain and stiffness at times."  (AR 1275.)  He noted that

-10-

Plaintiff "exhibits pain behaviors with changes in position." (*Id.*)  He also stated that she

"has had physical therapy and lumbrosacral epidural steroid injections" with only "partial

and temporary relief of pain", and that she should be referred to a pain clinic because of

chronic pain.  (*Id.* 1275-76.)  From the foregoing, it is difficult to determine how the ALJ

did anything other than substitute her judgment for that of Dr. Buchanan in finding that

his treatment notes did not support his opinion regarding Plaintiff's physical restrictions.

*Winfrey v. Chater*, 92 F.3d 1017, 1022-23 (10th Cir.1996) (ALJ erred in substituting his

medical judgment for that of a medical professional).  Indeed, a doctors's statements

about Plaintiff's condition or impairments "are specific medical findings".  *Washington v.*

*Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The ALJ errs in rejecting those opinions

in the absence of conflicting evidence.  *Id.*

　　　　Moreover, while the ALJ stated that Dr. Buchanan's opinion was inconsistent with

the medical evidence, the only other medical opinion in the record—that of

Dr. Dallenbach—supported the opinion.  The ALJ appears to rely primarily on the

results of the "[r]ecent post-operative imaging show[ing] only mild degenerative cervical

changes" in rejecting the opinions of Drs. Buchanan and Dallenbach.  (AR 20.)  Again,

however, that puts the ALJ in the position of substituting her judgment for that of the

medical professionals.

　　　　Even if Dr. Buchanan's evidence was inconsistent with other substantial evidence

in the record, that did not allow the ALJ to simply reject his opinion.  Instead, his opinion

would simply not be entitled to controlling weight.  *See Krauser v. Astrue*, 638 F.3d

1324, 1330 (10th Cir. 2011).  As explained by the Tenth Circuit, "[e]ven if a treating

opinion is not given controlling weight, it is still entitled to deference; at the second step

in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." Id. "If this is not done, a remand is required." *Id.* The record does not indicate that the ALJ gave Dr. Buchanan's opinion deference as required or that she weighed the relevant factors as to the weight to be given Dr. Luna's opinion.  The ALJ's failure to properly weigh Dr. Buchanan's opinion is significant because he was the only treating physician to offer an opinion of limitations and would preclude the jobs the ALJ found Plaintiff could do.

The ALJ also stated that because Dr. Buchanan reported his restrictions were relevant since 2008, two years prior to the beginning of his treatment relationship with Plaintiff, "[i]t appears that Dr. Buchanan's opinion may be based on the claimant's self-report as opposed to objective findings." (AR 20.)  While an ALJ may reject a physician's opinion if it is based solely upon Plaintiff's subjective complaints, such a conclusion fails unless supported by evidence in the record.  *Langley*, 373 F.3d at 1121 (10th Cir.2004).  The ALJ's suggestion that the opinion is based on Plaintiff's self-reports is purely speculative—indeed, the ALJ qualified her statement with the use of the word "may".  Rather than make an assumption that Dr. Buchanan based his opinion on Plaintiff's self-report, the ALJ should have sought clarification from Dr. Buchanan as to how he reached this conclusion.  20 C.F.R. § 416.912(e) (requiring an ALJ to seek additional evidence or clarification from a medical source when faced with a conflict or ambiguity that required resolution).

As to Dr. Dallenbach's opinion, the ALJ gave it "little weight as it is inconsistent with the remainder of the medical record, although, notably, it was written prior to the claimant's successful cervical fusion surgery in January of 2009." (AR 20.) Again, however, the ALJ ignored the fact that Dr. Dallenbach's opinion was consistent with treating physician Dr. Buchanan's report, the only other medical opinion in the case and which was issued after the surgery. Moreover, the ALJ was not qualified to determine how the diagnostic results after the surgery impacted Dr. Dallenbach's opinion. Again, this is something the ALJ should have contacted Dr. Dallenbach about.

The above errors in the RFC and the weighing of the medical evidence regarding Plaintiff's physical restrictions requires a remand.

### 4.    The Assessment Regarding Plaintiff's Mental Impairments

Finally, Plaintiff argues that the ALJ failed to properly assess her mental impairments. The Commissioner required Plaintiff to submit to a consultative mental health examination with Patricia C. Schniedwind, Psy.D. (AR 253.) Dr. Schniedwind diagnosed Plaintiff with "Major Depressive Disorder, recurrent Moderate", "Posttraumatic Stress Disorder" and "Chronic Pain." (AR 257.) Dr. Schneidwind opined that the combination of Plaintiff's symptoms would make it difficult for her to meet the demands of competitive work. (*Id.*) Dr. Schniedwind also stated that Plaintiff's ability to complete a normal workday and workweek may be impaired by the combination of her chronic pain and her psychological symptoms. (*Id.*) Consistent with these opinions, Dr. Schniedwind assigned Plaintiff a GAF score of 50, indicative of serious symptoms.[4]

---

[4] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-*

On the other hand, the nonexamining physician, Dr. Lewy, found Plaintiff to be moderately impaired in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to interact appropriately with the general public.  (AR 258-259.)  Dr. Lewy concluded that Plaintiff can follow simple one and two step instructions; can concentrate for up to two hours at a time; can work with supervisors and coworkers, but must have limited contact with the general public; can complete predictable tasks; and can cope with usual hassles, stresses, and changes. (*Id.* 260.)

The ALJ said she was not able to give Dr. Schniedwind's opinion much weight "as it is inconsistent with the findings contained within the consultative examination notes, as well as the remainder of the medical evidence and testimony." (AR 21) (citing Exhibit 5F).  Instead, she accepted the opinions of non-examining state agency physician Dr. Lewy in the creation of the mental limitations in the RFC finding.  (*Id.*)  The ALJ's sole reason for "accepting" Dr. Lewy's opinion and "incorporating" it into her RFC finding is because "it is consistent with the evidence and testimony available in the case."  (*Id.*)

---

*Zachary*, 695 F.3d at 1162 n. 1.  A GAF score of 50 lies within the 41-to-50 range, which indicates "'serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job.'"  *Groberg v. Astrue*, 415 F. App'x 65, 70-71 (10th Cir. 2011) (unpublished) (quoting *Pisciotta v. Astrue,* 500 F.3d 1074, 1076 n. 1 (10th Cir.2007) (quotation and alterations omitted)).  The Tenth Circuit stated in *Groberg* that a GAF score of 50 "demonstrates that Groberg's mental impairments were serious and likely to have some effect on his ability to work."  *Id.* at 71.

I agree with Plaintiff that the ALJ did not properly explain the basis for her decision regarding these medical providers.  As noted previously, the sufficiency of the ALJ's decision must be evaluated based upon the reasons provided by the ALJ.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004).  In this case, the ALJ first discounts Dr. Schniedwind's conclusions on the basis that her opinion conflicts with the examination findings.  The ALJ does not, however, explain how Dr. Schniedwind's opinion is inconsistent with her findings.  It is thus "beyond meaningful review", as I am "left to speculate what specific evidence led the ALJ to [her conclusion]."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995).  Similarly, the ALJ's decision to reject the opinion of Dr. Schniedwind as inconsistent with the medical evidence and testimony and accept Dr. Lewy's opinion as consistent with the evidence and testimony is not supported by substantial evidence and it fails to explain the evidence or testimony she is referring to.

Moreover, the ALJ may not substitute her opinion for that of a medical provider. She appeared to do this in connection with Dr. Schniedwind's opinion, while ignoring the GAF score assigned to Plaintiff and the doctor's statements about Plaintiff's condition *See Winfrey*, 92 F.3d at 1022 ("the ALJ clearly overstepped [her] bounds when [she] substituted [her] medical judgment for that of" the physician when she determined that the test results were not adequate to support the physician's diagnosis); *Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005) (finding that an ALJ may not judge a medical professional on the assessment of medical data").

I also note that an examining physician's testimony is normally supposed to be given more weight than a non-examining physician's opinion.  *Thomas*, 147 F. App'x at

-15-

759-60 (citing *Robinson,* 366 F.3d at 1084).  Here, Dr. Lewy's opinion was based on his assessment of Dr. Schniedwind's opinion, which it appears he disagreed with.  (AR 274.) However, an ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion is supported by evidence in the case record.  *Lee,* 117 F. App'x at 687 (citing SSR 96-6P, 1996 WL 374180, at *2).  In other words, the agency consultant's opinion must itself "find adequate support in the medical evidence."  *Id.* There is nothing in the evidence Dr. Lewy said he considered that supports his findings as to the number of instructional steps Plaintiff can follow, the number of hours she can concentrate at a time, of the predictability of the tasks she can perform, etc.  His opinion also could not have been based on Plaintiff's testimony since it was issued before the hearing.  Thus, the ALJ's finding that Dr. Lewy's opinion was consistent with the evidence and testimony is not supported by substantial evidence.  This is a prime example of why the courts consider nonexamining physician's opinions to be of "suspect reliability."  *See, e.g., Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

Dr. Lewy also bases his opinion on the fact that Dr. Schniedwind 's opinion "is based on clmt's complaints and not on objective medical evidence."  (AR 274.) However, the Tenth Circuit is clear that [t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."  *Thomas*, 147 F. App'x at 759.  "A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Id.* (quotations omitted).  Moreover, Dr. Lewy (and the ALJ) ignored the fact that Dr. Schniedwind's opinion was based on the *combination* of Plaintiff's pain and her mental impairments.  In *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007), the

Tenth Circuit found error with the ALJ's decision rejecting the "overall medical opinion" from a treating clinical nurse specialist in favor of opinions of medical providers who considered only "a particular aspect of Ms. Frantz's condition and found her to be capable of work, despite not having considered all of her impairments in combination." The same error appears to have occurred here.

Based on the above errors, I also find that a remand is necessary so that Plaintiff's mental impairments and the medical evidence regarding same may be properly considered.

III.   <u>CONCLUSION</u>

I find that the ALJ erred in his assessment of Plaintiff's headaches at step two. She also erred in not conducting a function-by-function assessment of Plaintiff's RFC, and in connection with the assessment and weighing of the medical evidence regarding Plaintiff's physical and mental impairments.  Accordingly, I find that this case must be remanded for further fact finding.  *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (outright reversal and remand for immediate award of benefits is appropriate only when additional fact finding would serve no useful purpose.). It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  September 22, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-17-